OPINION OF THE COURT — by the
Hon. GEO. WINCHESTER.
This is an entire contract on the part of the plaintiff for the delivery of ten negro slaves,-identified by their names; and the sale and delivery of these ten slaves was the consideration for which the notes here sued upon were given — which sale and delivery was to be completed on a day in order of time, prior to that upon which the.notes were made payable. The sale and delivery was clearly a condition precedent to the] defendant’s obligation to .pay the purchase money.
The defence set up is a total failure of consideration.
The plaintiff proved that upon the day agreed for the delivery of the slaves, one of them had run away, and that it was out of his power to deliver him; but that he then tendered the other nine, with a promise to deliver the1 tenth when he should obtain .him; or to deliver another to be adjudged of equal value., or to make compensation. Mention was also made by one of the witnesses of a bill of sale delivered to the defendant, which was not offered in evidence at the trial, nor its contents shown in the bill of exception.
The defendant returned the bill of sale, and refused to accept any thing short of a delivery of the entire ten negroes named in the agreement,* ■and insisted upon his right to treat the contract as at an end.
*275 There, was no evidence of a subsequent offer to deliver the tenth slave; so that the question how far time is of the essence of this contract, does not necessarily arise.
Had the defendant a right to insist upon the delivery of the entire ten slaves named in the agreement, and upon the plaintiff’s failure or refusal to deliver any one to treat the contract as at an end?
The eminent counsel for the plaintiff — the loss of whose usefulness, eloquence and learning, the court, the bar and the public now sensibly feel and equally deplore — urged in argument, that an actual delivery of the ten slaves was unnecessary to entitle the plaintiff to recover — that the execution and delivery of the bill of sale was a complete transfer of the slaves' to the defendant and constituted the entire performance of the consideration of the notes.
The rule as expressed in the 2d volume Blackstone, page 448, is:
That by a regular sale, without delivery the property is so absolutely vested in the vendee — that if A sells a horse to B for 1Q6 and B pays him earnest, qr signs a note in writing of the bargain, and afterwards, before the delivery of the horse or money paid, the horse dies in the vender’s custody ; still he is entitled to the money, because by the contract, the property was in the vendee.
Agreeable to this rule, the delivery of the bill of sale, had there been no express agreement for an actual delivery of the ten slaves on a future day, might have been considered a constructive delivery of the slaves and have been construed a regular sale; but can it be said, that, “ By the contract between these parties the property was so completely vested in the vendee,” that if a part or all of these slaves had died in the custody of the plaintiff before the day upon which he agreed to deliver, them that he would still have been entitled to the money. Such was evidently not the sense of the contract, orthe understanding of theparties. A traditio ma-nuum, an actual delivery on a future day was intended as a completion of the contract of sale and constituted an essential part of the consideration of the notes. If the plaintiff had wholly refused to deliver the entire slaves, and had sued upon these notes, it could not have been pretended that there had been no failure of consideration.
The only question then is, as the plaintiff had engaged to sell and de *276 liver the ten slaves named and was unable to deliver one of the ten, had the defendant a right to refuse to accept nine, with an equivalent or satisfaction for the tenth, and treat the contract as at an end?
No rule.is better fortified by a long current'of decisions or better founded in the principles of natural justice, than that, where there is an express contract open and subsisting, the parties shall be governed by it, and the law will raise no implied contract, and that an entire contract cannot be divided except by mutual consent of the'parties-to it. It is the province of courts to enforce the legal obligation of contracts, according to their terms, and not to vary or alter them by adding or detracting from their terms upon any notions of what would be fair and just.
In the case of the Countess of Plymouth vs. Throckmorton 1 Salk. 65, defendant’s testator promised plaintiff 100Z. per annum for his service, if he should collect his rents, defendant’s testator died three quarters of a year after, and plaintiff demanded 75l. for three quarters.
Holt argued that, without a full years service, nothing could be due, and'that it is in the nature of a condition precedent. If I lease lands for years, reserving 20Z. rent yearly, and at the end of three quarters be evicted, lessor shall have no rent, for rent shall never be apportioned in respect of time; so it is of wages, annuity and debt. Annua nec debitum judex non, separat. This being one consideration and one debt, cannot be divided.
The court in their decision sustained the argument. Here we find the principle early recognised that a court has no power to divide an entire contract in respect to time, wages, annuity and debt. This rule is supported in many decided cases since, in suits for seamen’s and servant’s wages in contracts for building houses and in contracts for sale of lands and of goods and cha'ties.
But the counsel for the plaintiff contended, that although the contract be entire, yet, if the vendor fail to perform only an immaterial part, and that which was not a main inducement to the contract with the vendee, and such part can be compensated in damages, the court will not rescind the contract, but compel the parties to perform.
The cases cited, shew that the rigour of the rule that an entire con- . tract cannot be divided is relaxed, but yet upon such principles as nei *277 ther destroy or impeach the rule, but rather sustain it. Some of the cases are where lands were sold and deeds with covenants of seisin executed, and the purchase money paid, being cases of executed contracts: and in suit upon a breach of the covenant of seisin, where there was a defect of title to only apart of the lands, the court refused to rescind the contract, and suffer the plaintiff to recover in damages the whole amount of the purchase money. .'
Here there is no departure from the rule, that the court cannot divide an entire contract. The plaintiff sues the defendant for the non-performance of his entire contract and the question is what damages has he sustained by the non-performance. Surely not the whole amount of the purchase money, if the contract has failed only in an immaterial part.
Other cases are for freight upon chartei’ parties, where the courts have refused to consider an entire performance a condition precedent, because the defence did not go to the whole consideration on both sides. In the case of Ritchie v. Atkinson, 10 óf East. 307. this class of cases is very fully reviewed and discussed.
In this case, Lord. Ellenborough says,
If the delivery of a complete cargo were a condition precedent to the recovery of any freight, no doubt the defendant would be entitled to recover the strictest performance of it: but the question is whether it be a condition precedent? and that depends not on any formal arrangement of the words, but on the reason and sense of the thing, as it is to be collected from the contract, whether of two things reciprocally stipulated to be done, the performance of the one does, in sense and reason, depend.upon the performance of the other. The rule was laid down by Lord Mansfield in Boone v« Eyre, that where mutual covenants go to the whole of the consideration on both sides, they are mutual conditions the one precedent to the other, but where the covenants go only to a part, there a remedy lies on the covenant to recover damages for the breach of - it, but it is not a condition precedent. That was a case where the plaintiff had conveyed to tho defendant, a plantation in the West Indies, with the negroes on it, and had covenanted that he had a good title, and was lawfully possessed of the negroes; and the defendant covenanted, that the plaintiff well and truly performing all and every thing the deed contained on his part to be performed, he the *278 defendant would pay a certain annuity; and to an action on covenant for the non-payment of the annuity, the defendant pleaded, that the plaintiff was not at the time, legally possessed of the negroes, and so had not a, good title to convey. But on demurrer, Lord Mansfield said, that if such a plea were to he allowed, if any one negro were not the property of the plaintiff, it would bar the action. He must therefore have considered that such- a covenant was in its nature ápportionable, according to the damage sustained by the breach of it, and did not make a condition precedent to the payment of the annuity. Now apply that to the present case. Here is a ship of about 40 0 tons, which is freighted to go to St. Petersburgh, and to bring a complete cargo of hemp and iron, and to deliver the same on being paid freight at so much per ton on each commodify.
If the owner be not entitled to freight for any proportion of the goods he may bring home short of a complete cargo; and it'should appear by any subsequent admeasurement of the vessel even after the delivery of, the cargo, that there was wanting some small fraction of a complete cargo; if the ship had been supposed to measure 400 tons, and a cargo adapted to that proportion had been loaded, and it turps out that she measured 10. or 12 tons more; the owner would altogether be defeated of his remedy for the whole freight.
But would not such a construction .be contrary to common sense and the true nature of such a contract? “ Here the delivery of the cargo, is in its nature divisible, and therefore I think it is not a condition precedent. All the cases of conditions precedent have been where the thing to bo done was a strict indivisible condition.
But according to the true nature of this contract, was not the delivery of the ten negroes named, a strict indivisible condition? Could the value tobe deducted for the non-delivery of the one negro, be ascertained from the terms of the contract, any more than the value of nine months service, out of a years service in the case of the Countess of Plymouth v. Throck-morton? The defendant Galliard agrees to pay fifteen hundred dollars for each and every of the said negroes.
This cannot be construed to signify that the slaves were of equal value, and that if any one was delivered without the others that hé soould be valued at fifteen hundred dollars. Upon the delivery of each and every *279 «lave he was to pay at that rate, and the amount of these notes is one 'entire debt, for which the delivery of the ten negroes wa$ one consideration, yet if it be admitted, that the delivery of the tenth negro would not have been construed a condition precedent, provided the other nine had been delivered; the non-delivery of the whole ten goes to the entire consideration of the notes — and none of the cases cited, shew that the vendee was bound to accept a tender of the part without the whole. A tender of the whole would be equal to an actual delivery, because the defendant is bound to accept them, but tho tender of nine cannot be equivalent to an ■actual delivery, unless the defendant were bound to accept them. In ■the case of Ritchie v. Atkinson, had the cargo to be delivered been precisely ascertained, and had the plaintiff before He started upon the voyage, ascertained that he could not bring and deliver more than half the cargo; jf the defendant had then refused to accept such part performance, and written to his shipping merchant not to deliver the goods, could the plaintiff have recovered freight, because he had offered to transport part of the cargo? The cases cited, are all cases of executed contracts; or for services rendered in pursuance of a special contract, where although the entire contract has not been completely performed, the one party has received from the other a service, which he cannot restore, and for which he ought in justice and equity to pay, and the contract being in its nature susceptible of apportionment, the law raises an implied assumpsit, that he shall pay for, so much as he has actually-received.
These cases too are' stronger cases upon the principles of- natural justice and equity, than cases for the sale of goods, where if the part of the goods contracted for, be delivered, the vendee if he insists upon an entire performance, may do so without injustice byrestoring the goods delivered to the vendor, and thus placing him in the situation, where he was in interest before the contract.
■But there are authorities more direct upon the point of the vendee’s right to insist upon an entire performance of-the contract.
In Giles and others vs. Edwards, which was a case of the sale of cord wood, at 11s. and 6d. per cord, Lord Kenyon aid, this was an entire contract; and as by the defendants default, the plaintiff’s could not perform what they had undertaken to do, they had a right' to put an end to *280 the whole contract, and recover back the money they had paid under it; they were not bound to take a part of the wood only.
Brief of Griffith & Quitman for Appellant.
George Adams, Attorney for Appellee.
In Bruce & Bruce vs. Pearson 3, Johnson’s Rep. 534, an order was sent by the defendant for six hogsheads of rum and other articles and the defendant sent only three, and omitted part of the other articles. The order directed how the goods should be sent, and they were sent accordingly, and if all had been sent, would consequently have been at defendant’s risk. The ”cssel having the goods on board, was cast away and a part of the goods lost. Upon an action to recover for the goods sent; the court decided this cannot amount to a contract. There is no agreement, no aggregatio mentium between the parties, as to the thing, or subject matter of the contract. The defendant wished to have the whole of the'goods; a Fpart of them might, he of no use; and until he assented to receive a part instead of the whole, he cannot be said to have contracted to pay for a part; and there can be no implied assumpsit to pay as the goods sent never came to his hands. These cases completely recognise the right of the vendee to insist upon the entire performance of the contract and refuse acceptance of a part performance. The defendant never contracted to receive nine slaves, and an equivalent for the tenth, and the court cannot enforce such terms upon him. There is no such special contract. He did not receive the nine negroes; and there can be no implied assumpsit to pay for them.
In fine, I think it tho result of the authorities that, in contracts for the sale of lands or goods, dr for work and labour, or the render of certain services, although, the contract be entire, the performance of the entire contract cannot be insisied upon as a defence, where the defendant has received a part performance, beneficial to himself, and the contract is not in its nature indivisible; but he shall, as upon implied assumpsit, upon the principles of natural justice and equity, pay for the property, labor or service he has received, unless he has first restored to the .other party what he has received from such part performance.
But that he has in all cases, a right to insist upon complete performance of an entire contract, and upon refusal-or default thereof, to refuse acceptance of a part performance and consider the contract at an end.
*281 Addendum, by R. J. Walker. — If part not performed as to time &c., be immaterial, or not, the main inducement to the contract, the vendor can go into a court of Equity, and they will judge how far material, and grant compensation. A court of law cannot do this. I Peters, 455.